UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

HOMER LLOYD POTTER,                )
                                    )
           Plaintiff,               )
                                    )
v.                                  )          No. 3:12-CV-202
                                    )          (VARLAN/SHIRLEY)
CAROLYN W. COLVIN,                  )
Commissioner of Social Security,    )
                                    )
           Defendant.               )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings

and Memorandum in Support [Docs. 15, 16] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 19, 20].  Plaintiff Homer Lloyd Potter ("Plaintiff") seeks

judicial review of the decision by Administrative Law Judge ("ALJ"), the final decision of the

Defendant Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner").

On August 3, 2009, the Plaintiff filed an application for a period of disability and

disability insurance benefits, claiming a period of disability which began on August 3, 2009. [Tr.

129-53]. After his application was initially denied and denied again upon reconsideration, the

Plaintiff requested a hearing. [Tr. 90]. On July 8, 2011, a hearing was held before an ALJ to

review the Plaintiff's claim. [Tr. 26-71]. On September 8, 2011, the ALJ found that the Plaintiff

was not disabled. [Tr. 12-20]. The Appeals Council denied the Plaintiff's request for review;

thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

# I.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since August 3, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: HIV positive and seizure disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) that the claimant can lift 30 to 40 pounds in a non-hazardous environment.

6. The claimant is capable of performing past relevant work as a case aide, pre-school teacher, and deputy court clerk. This vocational expert testified that this work does not require the performance of work related activities precluded by the claimant's residual functional capacity except for the job as waiter (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 3, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 14-20].

## II.   DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

3

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

4

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits. <u>Boyes v. Sec'y of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ committed four specific errors. First, he asserts that the ALJ erred by not finding that the Plaintiff's bipolar disorder is a severe impairment. [Doc. 16 at 12]. Second, the Plaintiff contends that the residual functional capacity determination was not supported by substantial evidence. [<u>Id.</u> at 15]. Third, he states that the ALJ failed to apply the appropriate legal standards in assessing his credibility. [<u>Id.</u> at 19]. Finally, he argues that the ALJ erred by finding that he could perform past relevant work. [<u>Id.</u> at 22].

The Commissioner responds that substantial evidence supports the ALJ's evaluation of the Plaintiff's severe impairments, the residual functional capacity determination, the ALJ's credibility assessment, and the determination that the Plaintiff could perform past relevant work. [Doc. 20 at 3-12].

## V.    ANALYSIS

The Court will address the Plaintiff's arguments in turn.

### A.    Severe Impairment

The Plaintiff argues that the ALJ erred by not finding that his bipolar disorder was a severe impairment. [Doc. 16 at 12]. He contends that his bipolar disorder has caused him more than minimal functional limitations since at least August 2005. [<u>Id.</u> at 13].

The Commissioner responds that the Plaintiff has not alleged that his bipolar disorder has significantly affected his ability to perform work-related activities. [Doc. 20 at 4]. In addition, the Commissioner argues that even if the Court determines that the ALJ should have found that the Plaintiff experienced additional impairments, the error is harmless because the ALJ found in the Plaintiff's favor at step two and continued with the sequential evaluation process. [Id.].

On November 3, 2009, Desiree Kinard, a physician's assistant, noted that the Plaintiff complained of anxiety, depression, high stress, insomnia, and nightmares. [Tr. 351]. His medical history included HIV, seizure d/o, insomnia, tobacco use, and a previous methadone addiction. [Tr. 351]. Ms. Kinard reported that the Plaintiff appeared anxious and tearful and had pressured speech. [Tr. 351]. Her assessment was adjustment disorder with anxiety and HIV. [Tr. 351]. Several weeks later, Ms. Kinard noted that the Plaintiff was pleasant and "in no acute distress." [Tr. 355]. She also noted that the Plaintiff was anxious and exhibited pressured speech. [Tr. 355]. Her assessment included HIV, insomnia, and an anxiety disorder in conditions classified elsewhere. [Tr. 355].

On March 2, 2010, Carol Phillips, Ed.D, conducted a psychological assessment. [Tr. 389-92]. With regard to his mental health, the Plaintiff reported a history of bipolar depression and anxiety. [Tr. 390]. Dr. Phillips noted that the Plaintiff was "oriented for time, place, person, and situation" but experienced "difficulty maintaining both focus and concentration during the interview." [Tr. 391]. Her diagnostic impressions included depressive disorder, NOS and anxiety disorder, NOS. [Tr. 392]. Dr. Phillips noted that the Plaintiff experienced no impairments in the ability to understand and remember difficult or simple instructions but was mild to moderately impaired in the ability to concentrate, persist, or pace; socially behave; and the ability to adapt. [Tr. 392].

On September 7, 2010, Chad Sims, Ph.D., noted that the Plaintiff has a history of treatment for bipolar disorder with past hospitalizations. [Tr. 604]. The Plaintiff reported four suicide attempts associated with periods of inpatient care. [Tr. 604]. The Plaintiff also reported depressive symptoms with lethargy, reduced appetite, hypersomnia, feelings of hopelessness, and loss of interest in activities. [Tr. 604]. In addition, the Plaintiff stated that he experienced manic episodes accompanied by increased impulsivity, dramatically reduced need for sleep, pressured speech, euphoria, and possible racing thoughts. [Tr. 604]. Finally, the Plaintiff reported opiate use through a provider in Chattanooga, past marijuana use, and that he experimented with other substances in the past. [Tr. 604]. With regard to the Plaintiff's mental health, Dr. Sims diagnosed him with bipolar affective disorder, manic and opioid dependence on agonist therapy. [Tr. 604].

The Plaintiff saw Dr. Sims about a year later. [Tr. 634]. Dr. Sims reported that the Plaintiff failed to follow-up with his behavioral health but was returning for a new intake. [Tr. 634]. The Plaintiff reported that he was depressed but had not experienced a manic episode in about six months. [Tr. 634]. Dr. Sims noted that the Plaintiff "evidenced some excessive, mildly pressured speech," but the Plaintiff indicated that his speech was at his baseline. [Tr. 634]. The Plaintiff reported that he was "currently tapering with methadone." [Tr. 634]. Dr. Sims noted that the Plaintiff's appearance was normal, his attitude was cooperative, he was fidgety, his speech was excessive, he was depressed, his affect was appropriate, his thought processes were circumstantial, and his thought content was normal. [Tr. 634]. At the next appointment, Dr. Sims noted that the Plaintiff's speech was excessive and that his mood was depressed. However, Dr. Sims reported that the Plaintiff was "good," "normal," "calm," or "appropriate" in the following categories: memory, attention, reasoning, impulse, judgment, insight, appearance, attitude, motor activity, affect, thought processes, and thought content. [Tr. 637]. On September 27, 2011, and

8

November 11, 2011, Dr. Sims stated that the Plaintiff's speech was difficult to interrupt at times. [Tr. 638-39].

Finally, on March 11, 2010, Rudy Warren, M.D., completed a "Psychiatric Review Technique." [Tr. 394]. Dr. Warren noted that the Plaintiff had depressive and anxiety disorders but, they were not severe. [Tr. 394, 397, 399]. Dr. Warren gave great weight to the opinion that the Plaintiff was mild to moderately impaired in the following categories: concentrate, persistent, or pace; social behavior; and the ability to adapt. [Tr. 406].[1] Dr. Warren also reported that the Plaintiff had no impairment in the ability to understand and remember simple and detailed information. [Tr. 406]. Dr. Warren noted that the Plaintiff's records do not support bipolar disorder and that he "appears to have stabilized on current medication regimen." [Tr. 406].

The ALJ opined that the Plaintiff experienced the following severe impairments: HIV positive and seizure disorder. [Tr. 14]. The ALJ concluded that the Plaintiff's mental impairments of affective and anxiety-related disorders "do not cause more than minimal limitation in the claimant's ability to perform basic mental-related work activities and are therefore nonsevere." [Tr. 14]. The ALJ then examined the Plaintiff's activities of daily living, social functioning, ability to concentrate, persistent, or pace, and whether the Plaintiff experienced any episodes of decompensation. [Tr. 15]. Specifically, with regard to the Plaintiff's alleged bipolar disorder, the ALJ found:

> The claimant alleges treatment for bipolar disorder, but no medical records supports a diagnosis of bipolar disorder. Claimant is currently receiving medications from his treating physicians for adjustment disorder, which his symptoms have responded well to medications. At the examination, the claimant did not appear overly anxious, did not exhibit pressured speech, and was able to answer and perform examination items satisfactorily. His activities of daily living reflect that he is able to perform chores, prepare

---

[1] Dr. Warren, however, checked the box for "mild" limitations in the following categories: daily living; maintaining social functioning; and maintaining concentration, persistence, and pace. [Tr. 404].

simple meals, follow instructions, and socialize with others satisfactorily. Claimant has not required recent inpatient stays for his mental health condition and appears to have stabilized on current medication regimen. Singly or combined, claimant's mental condition does not appear to impose more than mild limitations on his ability to perform tasks. Further, he is capable of managing his own money.

[Tr. 16].

The Court finds that the ALJ did not err when he found that the Plaintiff's alleged bipolar disorder was not a severe impairment. Pursuant to 20 C.F.R. §404.1520(c), a severe impairment "significantly limits your physical or mental ability to do basic work activities." "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting Higgs v. Brown, 880 F.2d 860, 862 (6th Cir. 1988)). Although the ALJ's statement that there were no medical records supporting a bipolar disorder diagnosis was inaccurate, [2] there is simply no evidence, as the ALJ explained, that the Plaintiff's alleged bipolar disorder rises to the level of significant impairment of basic work activities. The ALJ's explanation of the Plaintiff's nonsevere mental impairments is detailed and spans two pages.

Furthermore, although Dr. Sims opined that the Plaintiff experienced bipolar affective disorder, he did not indicate any limitations on the Plaintiff's ability to do basic work activities. [Tr. 604, 634, 637-38]. In fact, Dr. Sims only noted that the Plaintiff appeared depressed, his speech was excessive, and his thought processes were sometimes circumstantial. [Tr. 604, 634, 637-38]. Dr. Sims's report also indicated that a majority of the categories on the mental status examination were fine. [Tr. 604, 634, 637-39]. Furthermore, Dr. Warren and Dr. Phillips, the

---

[2] For instance, Dr. Sims opined that the Plaintiff had bipolar affective disorder. [Tr. 604]. In addition, other medical records show that he was diagnosed with bipolar disorder in 2005; however, these medical records were created before the Plaintiff's alleged onset date of August 3, 2009. [Tr. 593-99]. In any event, the Court has reviewed these documents, and they do not change its analysis. The medical records are similar to Dr. Sims's assessment in that they do not support the Plaintiff's contention that his bipolar disorder is a severe impairment.

only doctors who offered their opinion with regard to how the Plaintiff's alleged mental condition would affect his work-related abilities, both opined that his mental impairments were not severe. [Tr. 392, 406]. In addition, Dr. Warren noted that the records do not support the Plaintiff's alleged bipolar disorder. [Tr. 406]. Moreover, while the Plaintiff argues that his bipolar disorder has at least caused him more than minimal functional limitations, this is simply, as explained above, not the standard. See 20 C.F.R. § 404.1520(c) (severe impairment significantly limits a person's ability to perform bask work activities).

Finally, even if it was an error, the Court finds that it was harmless. See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). In Maziarz, the ALJ determined that the claimant suffered from several severe impairments but that his cervical condition was not severe. Id. Because the ALJ continued with the remaining steps and discussed the "claimant's cervical condition in determining whether the claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity," the court held that it was "unnecessary to decide" whether the ALJ erred by not classifying the impairment as severe at step-two. Id. at 244.

In the present matter, the ALJ continued with the remaining steps and discussed the Plaintiff's mental impairments in determining his residual functional capacity. [Tr. 19]. Specifically, the ALJ stated, "[T]he claimant has "no severe" mental functioning limitations by the opinion of the State Agency psychological consultant, Dr. Warren." [Tr. 19].

Accordingly, the Court finds the Plaintiff's argument not well-taken. See also Fisk v. Astrue, 253 F. App'x 580, 584 (6th Cir. 2007) (finding it unnecessary to decide whether the ALJ had committed error when he failed to find claimant's coronary artery disease severe because the

ALJ later stated at the step four analysis that the claimant was "negative for significant coronary disease").

**B.     Residual Functional Capacity Determination**

The Plaintiff generally argues that his residual functional capacity is not supported by substantial evidence. [Doc. 16 at 15]. The Plaintiff articulates two specific errors. First, he asserts that the ALJ erred by affording no weight to Dr. Phillips's opinion. [Id.]. Second, he contends that the ALJ failed to properly weigh the opinions of the state agency consultants, Dr. Settle and Dr. Warren. [Id. at 18].

The Commissioner responds that the Plaintiff's argument lacks merit because the ALJ properly considered these opinions, according them the correct weight, and articulated sufficient good cause for his decision.

*1.     Carol Phillips, Ed.D*

As described above, Dr. Phillips conducted a consultative examination on March 2, 2010. [Tr. 389-92]. She noted that he drove independently to the office and had no issues in locating the address. [Tr. 389]. She reported a history of mental health treatment at Lakeshore and Peninsula Hospitals. [Tr. 390]. She also reported an issue with pain management drugs in the past. [Tr. 390]. Dr. Phillips noted that the Plaintiff complained of a history of bipolar depression and anxiety. [Tr. 390]. In addition, the Plaintiff claimed that his depression was connected to his seizures and lack of work. [Tr. 391]. With regard to the Plaintiff's mental status, Dr. Phillips stated:

> Mr. Potter was oriented for time, place, person and situation. He
> had difficulty maintaining both focus and concentration during the

12

interview. He offered no claims or indications of hallucinations, paranoia or delusional behaviors. He had no difficulties with serial threes. He was able to recall all three words presented, a current event of the past week, the current and most recent presidents and three cities in the United States. He had no difficulty with arithmetic calculations. His thought content was appropriate to the subject matter discussed. His flow of ideas was at a normal pace and his psychomotor activity showed no agitation. He presented without evasiveness, suspiciousness or hostility.

[Tr. 391]. Dr. Phillips also noted that the Plaintiff appeared capable of managing funds and that his intellectual functioning was within the average range. [Tr. 391]. Dr. Phillips diagnosed the Plaintiff with depressive disorder, NOS, and anxiety disorder, NOS. [Tr. 392]. Finally, with regard to the Plaintiff's ability to perform work-related activities, she concluded:

A.   Understand/remember simple information—no impairment
B.   Understand/remember detailed information—no impairment
C.   Concentration, persistence and pace—mild to moderate impairment
D.   Social behaviors—mild to moderate impairment
E.   Adaptability—mild to moderate impairment.

[Tr. 392].

The ALJ did not find that the Plaintiff suffered from any severe mental impairments, and therefore, limitations on the Plaintiff's mental abilities were not imposed in the residual functional capacity. [Tr. 14, 17]. When discussing severe impairments, the ALJ described Dr. Phillips assessment in detail. [Tr. 15-16]. He noted that Dr. Phillips found mild to moderate impairments in the ability to maintain concentration, persistence, and pace and in social behaviors. In addition, he noted that Dr. Phillips found that the Plaintiff had mild to moderate impairments in the Plaintiff's ability to adapt; however, the ALJ gave this opinion no weight because it was inconsistent with the medical evidence. [Tr. 16]. With regard to Dr. Phillips's assessment, the ALJ concluded:

13

> The undersigned finds that the opinion of the consultative psychological examiner deserves no weight secondary to the DSM-IV that defines the usage of the (NOS) as when the symptomatic picture does not meet the criteria for any of the specific disorders. This would occur either when the symptoms are below the diagnostic threshold for one of the specific disorders or when there is an atypical or mixed presentation, as said case.

[Tr. 16].

The Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he gave no weight to Dr. Phillips's opinion. He argues that Dr. Phillips's opinion is consistent with the record. It appears as though the ALJ disagreed with Dr. Phillips's conclusion that the Plaintiff had mild to moderate limitations in the ability to adapt. In fact, the ALJ stated that Dr. Phillips's opinion with regard to the Plaintiff's ability to adapt was inconsistent with the medical evidence. Because the ALJ did not elaborate, the Court is unsure as to what medical evidence the ALJ was referring.

Likewise, the ALJ did not explain why Dr. Phillips's opinion "deserve[d] no weight secondary to the DSM-IV that defines the usage of NOS." [Tr. 16]. Dr. Phillips, however, stated that her own diagnostic impressions were based upon the DSM-IV, as well. [Tr. 392]. Furthermore, the ALJ did not conclude that Dr. Phillips's use of NOS negated a diagnosis, as the Plaintiff alleges. In fact, the ALJ stated that Dr. Phillips concluded just the opposite. Specifically, a NOS diagnosis occurs "when the symptoms are below the diagnostic threshold for one of the specific disorders or when there is an atypical or mixed presentation, as said case." [Tr. 16] (emphasis added); see also Brooks v. Astrue, No. 08-cv-2608, 2010 WL 1254323, at *7 (N.D. Ohio Mar. 24, 2010) (stating that the "DSM-IV is 'one of the leading texts in medicine' and is consulted by courts in the Sixth Circuit when evaluating disability claims") (quoting Burrell v. Comm'r of Soc. Sec., No. 99-4020, 2000 WL 1827799, at *2 (6th Cir. Dec. 8. 2000)).

In any event, even if the ALJ improperly discounted Dr. Phillips's opinion, the Court finds this to be harmless. First, the ALJ relied upon Dr. Warren's assessment, which incorporated and gave "great weight" to Dr. Phillips's assessments.[3] In fact, their assessments are essentially the same. Second, Dr. Phillips concluded that the Plaintiff only had mild to moderate impairments in three categories—namely, social behavior, concentration, persistence, or pace, and the ability to adapt. Her conclusions are consistent with the ALJ's conclusion that the Plaintiff's mental impairments do not rise to the level of a severe impairment.[4] See 20 C.F.R. §§ 404.1520(c) and 416.920(c) (stating that a "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities") (emphasis added).

Accordingly, the Court finds that the Plaintiff's arguments are unpersuasive.

2.    *Consultative Examiners*

The Plaintiff asserts that the ALJ erred by not stating the weight he afforded to Dr. Settle's and Dr. Warren's opinions. [Doc. 16 at 19].

On January 28, 2010, Charles Settle, M.D., completed a residual functional capacity assessment. [Tr. 371-78]. Dr. Settle opined that the Plaintiff was able to occasionally lift fifty pounds and frequently lift twenty-five pounds. [Tr. 371]. He reported that the Plaintiff could walk, stand, or sit about six hours a day. [Tr. 371]. In addition, he noted that the Plaintiff had no postural limitations, no limitations on the ability to push or pull, no communicative limitations, and no manipulative limitations. [Tr. 371-74]. He did note, however, that the Plaintiff should avoid hazards due to his seizure disorder. [Tr. 374]. Dr. Settle stated that it is reasonable to limit

---

[3] The ALJ also cited Dr. Warren's assessment when discussing the Plaintiff's residual functional capacity determination. [Tr. 19].

[4] The Court also notes that Dr. Phillips did not find that the Plaintiff met any of the "B" criteria to meet Medical Listing 12.04 or 12.06. In fact, Dr. Phillips did not give marked limitations in any area.

the Plaintiff "secondary to pain." [Tr. 367]. Dr. Settle concluded that the Plaintiff had HIV but that his last CD4 count had improved and that his viral load remained undetectable. [Tr. 377]. With regard to the Plaintiff's seizure disorder, Dr. Settle noted that the records show some non-compliance with his medications. [Tr. 377]. For example, the Plaintiff reported that he filled his medications at Cherokee, but Cherokee's records show that the Plaintiff had not filled his medications there in almost two years. [Tr. 377]. Dr. Settle also reported that one seizure the Plaintiff experienced was due to the fact that he was unable to take his medicine because of nausea and vomiting. [Tr. 377]. He stated that it was reasonable to limit the Plaintiff's exposure to hazards due to pain and fatigue. [Tr. 377]. Finally, Dr. Settle concluded, "It is reasonable to expect that [the claimant's seizures] could be adequately controlled if he [was] compliant [with his medicine]." [Tr. 377].

On March 11, 2010, Dr. Warren completed a "Psychiatric Review Technique." [Tr. 394-406]. Dr. Warren's opinion is described above, supra 9. In addition, Dr. Warren stated that the Plaintiff has responded well to medications. [Tr. 406]. Dr. Warren reported that the Plaintiff "did not appear overly anxious, did not exhibit pressured speech, and was able to answer and perform exam items satisfactorily." [Tr. 406]. He also stated that the Plaintiff's activities of daily living "reflect that he is able to perform chores, prepare simple meals, follow instructions, and socialize [with] others satisfactorily." [Tr. 406]. He concluded:

> [The Plaintiff] has not required recent inpatient stays for his mental health condition and appears to have stabilized on current medication regimen. Singly or combined, [the claimant's] mental condition does not appear to impose more than mild limitations on his ability to perform tasks.

[Tr. 406].

The ALJ stated that his conclusion that the Plaintiff is not disabled is supported by the State Agency medical consultant Dr. Settle, and that his conclusion that the Plaintiff does not have severe impairments is supported by the opinion of the State Agency psychological consultant, Dr. Warren. [Tr. 18]. The ALJ explained that although Dr. Settle is a non-examining physician and Dr. Warren is a non-examining psychologist, and their opinions are not entitled to controlling weight, the opinions must still be considered. [Tr. 18]. He noted that both doctors are highly qualified and are experts in the evaluation of the medical issues in disability claims. [Tr. 19]. He also noted that the record does not contain any opinions from treating physicians that the Plaintiff is disabled. [Tr. 19]. Finally, throughout the entire opinion, the ALJ cites Dr. Warren's findings. [Tr. 15, 16, 19].

The Plaintiff asserts that the ALJ erred by not explicitly stating the weight he afforded to each doctor's opinion and that the weight given is unclear. Although the ALJ did not explicitly state the weight given to the opinions, it is clear that he agreed with their assessments and ultimately included their opinions in the residual functional capacity. [Tr. 19].[5] In fact, the ALJ stated that both doctors' assessments supported his conclusions. [Tr. 18]. The ALJ added that both doctors are highly qualified and experts in the field of disability. [Tr. 19]. It is obvious that he gave their opinions significant weight.

While the Plaintiff argues that Dr. Settle opined that the Plaintiff has HIV, a seizure disorder, and should avoid exposure to hazards, these limitations and conditions are incorporated in the residual functional capacity determination. [Tr. 18]. In addition, with regard to Dr.

---

[5] The only difference between Dr. Settle's assessment and the residual functional capacity is that the residual functional capacity states that the Plaintiff can lift 30 to 40 pounds and Dr. Settle opined that the Plaintiff could lift 50 pounds occasionally and 25 pounds frequently. [Tr. 17, 371]. However, the ALJ explained that he found the Plaintiff capable of lifting 30 to 40 pounds because it is how much the Plaintiff stated he could lift. [Tr. 19]. In any event, however, Dr. Settle's assessment and the residual functional capacity are both consistent with medium work, and therefore, does not change the Court's analysis. See 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

Warren's opinion, it is completely consistent with the ALJ's finding that there were no severe mental impairments. In fact, Dr. Warren concluded that the Plaintiff's mental limitations do not appear to impose more than mild limitations on his ability to perform tasks. [Tr. 406].

While it may have been best practice for the ALJ to explicitly state the weight given, the failure to do so was harmless. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004) ("There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."). Having the case remanded so that the ALJ can add the words, "significant weight," is a waste of judicial and administrative resources. Accordingly, the Court finds the Plaintiff's argument not well-taken.

### C.    Plaintiff's Credibility

The Plaintiff alleges that the ALJ failed to apply the appropriate legal standard when assessing his credibility. [Doc. 16 at 19]. He argues that the ALJ failed to take into account the side effects of his medication, alternate reasons why he did not take his seizure medication, his reason for not seeking regular treatment, and the fact that he underwent psychiatric therapy for his bipolar disorder. [Id. at 20-21]. Finally, the Plaintiff contends that the ALJ's use of boilerplate language does not provide substantial evidence to support the credibility finding. [Id. at 21].

The Commissioner responds that the ALJ thoroughly evaluated the Plaintiff's complaints of pain and other symptoms. [Doc. 20 at 9].

The ALJ found that while the Plaintiff's "medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are somewhat inconsistent with the above residual functional assessment." [Tr. 18]. The ALJ concluded that the residual functional capacity assessment was supported by the medical evidence and that the Plaintiff's "clinical and diagnostic testing fails to document any abnormality, which could reasonably be expected to result in the degree of limitations alleged." [Tr. 19]. The ALJ explained that the Plaintiff has been diagnosed with HIV and is receiving treatment, but his last CD4 count had improved and that his viral load has remained undetectable. [Tr. 19]. The ALJ cited to medical records by John Narro, M.D., which stated that the Plaintiff's condition is stable and that his HIV is asymptomatic. [Tr. 19].

The ALJ then discussed the Plaintiff's seizure disorder and found that there is "some indication of noncompliance with prescribed medications." [Tr. 19]. The ALJ noted that the Plaintiff stated that he gets his medication filled at the local clinic, but the records from the clinic showed that he had not filled anything in almost two years. [Tr. 19]. The ALJ stated that the failure to follow the prescribed treatment speaks to the Plaintiff's credibility. [Tr. 19]. Finally, he concluded that the medical records show that his seizure disorder is adequately controlled with medications. [Tr. 19].

The ALJ next discussed the Plaintiff's alleged ileus complaint. [Tr. 19]. The ALJ explained that there are no medical records that show treatment or mention of ileus. [Tr. 19]. To the contrary, the medical records show that the Plaintiff has a full range of motion with a normal gait and station. [Tr. 19]. The ALJ added that even if he accepted that the Plaintiff was credible with regard to his ileus allegation, the Plaintiff admitted that he could lift 30 to 40 pounds. [Tr. 19].

The ALJ concluded that the Plaintiff "admitted to wanting to become disabled to further his education under vocational rehabilitation, which is probative of his ability to work" and that the Plaintiff's "impairments have never approached a level of discomfort or other symptoms of the severity, frequency, or duration necessary to preclude the performance of all work activity." [Tr. 19].

As a general rule, an ALJ's credibility determination is entitled to substantial deference. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). However, the Regulations provide a non-exhaustive list of considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); Tell v. Comm'r of Soc. Sec., No. 11-cv-15071, 2012 WL 3679138, at *11 (E.D. Mich. July 13, 2012). Although the ALJ is not required to address every factor, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (1996); Tell, 2012 WL 3679138, at *11.

The Court finds that the ALJ did not err when discussing the Plaintiff's credibility. As described above, the ALJ discussed the Plaintiff's impairments and explained why his alleged

intensity was not fully credible. The Plaintiff cites to Social Security Ruling 96-7p, which states, "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular visits or failure to seek medical treatment." [Doc. 16 at 20]. The ALJ explicitly considered other explanations provided by the Plaintiff and contained in the record. In fact, the ALJ noted twice that the Plaintiff reported he could not take his medication due to vomiting. [Tr. 18, 19]. The ALJ also noted that the Plaintiff had low levels of Depakote in his system and that the Plaintiff reported filling his medications at Cherokee, but Cherokee's records indicated that he had not filled anything for almost two years. [Tr. 19, 377].

The Plaintiff also argues that the ALJ did not consider his reasons for not obtaining regular treatment. [Doc. 16 at 20]. The Plaintiff argues that he could not pursue regular treatment because of his difficulty with childcare and lack of vehicle. Id. However, the ALJ did not find the Plaintiff unreliable because he did not attend his medical appointments. Although two doctors noted that the Plaintiff failed to pursue medical treatment for a whole year and that the Plaintiff let his Ryan White status lapse, the ALJ did not mention these facts. [Tr. 629, 634].

In addition, the Plaintiff argues that the ALJ failed to consider the side effects caused by Depakote. [Doc. 16 at 20]. He alleges, "[T]he ALJ failed to specifically consider that [he] complain[ed] of increased stress and anxiety along with nausea, which is caused by Depakote." [Id.] The medical record that the Plaintiff cites to was created almost two years before the alleged onset date. In any event, the ALJ clearly considered this complaint, as he cites to it when discussing the Plaintiff's non severe and severe impairments. [Tr. 15].

Moreover, the ALJ also cited other reasons for finding that the Plaintiff was not fully

credible. For example, the ALJ stated that the Plaintiff "admitted wanting to become disabled to further his education under vocational rehabilitation, which is probative of his ability to work."[6] [Tr. 19]. More importantly, the ALJ noted that the medical records do not support the Plaintiff's alleged severe symptoms. [Tr. 18-19]. With regard to the Plaintiff's HIV, the record shows that it is asymptomatic and that his condition is stable on medication, which the ALJ explained. [Tr. 615]. In addition, the Plaintiff's seizure disorder is controlled with medication. [Tr. 615]. In fact, Dr. Narro's report indicated that the Plaintiff stated "his seizures are now much better controlled back on Depakote apparently with nortriptyline addition." [Tr. 615]. Dr. Narro concluded that the Plaintiff's "epilepsy [is] now controlled with Depakote and nortriptlyine." [Tr. 615]. The ALJ cited Dr. Narro's report in his conclusions. [Tr. 19]. Finally, with regard to the Plaintiff's alleged ileus and lower back pain, there are no medical records that support these impairments, which the ALJ duly noted. [Tr. 19]. In fact, Dr. Settle noted that the Plaintiff's allegation of back pain was "not fully credible." [Tr. 375].

Finally, the Plaintiff argues that the ALJ used boilerplate language that has been criticized by other courts. The Plaintiff is correct that the ALJ used the boilerplate language questioned by the Seventh Circuit:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

[Tr. 21]. Ultimately, the "template" language "says that all the claimant's allegations are not

---

[6] At least one court found that a plaintiff's participation in vocational rehabilitation should not detract from her credibility. Hedden v. Comm'r of Soc. Sec., No. 1:10-cv-534, 2011 WL 7440949, at *14 (W.D. Mich. Sept. 6, 2011). In Hedden, however, the plaintiff began vocational rehabilitation at the suggestion of her care providers. Id. In the present matter, the Plaintiff stated that he would like to use vocational rehabilitation to earn a degree, and then get off disability. [Tr. 42]. In any event, the Plaintiff did not raise this aspect of the ALJ's credibility assessment, and therefore, it is waived. See Humphrey v. U.S. Att'y Gen's Office, 279 F. App'x 328, 331 (6th Cir. 2008).

credible to the extent they are more severe than the [residual functional capacity]." Tell, 2012 WL 3679138, at *11. Like other courts that have decided this issue, this Court finds the "template" language to be "unhelpful." Id. However, in the present matter, while the ALJ used the "template" language, he provided additional reasons for discounting the Plaintiff's credibility pursuant to 20 C.F.R. § 404.1529(c) and explained his opinion fully. See Barbera v. Comm'r of Soc. Sec., No. 11-cv-13265, 2012 WL 2458284, at *14-15 (E.D. Mich. June 5, 2012) (finding that although the ALJ used the boilerplate language, the ALJ provided additional reasons for discounting the plaintiff's credibility).

Accordingly, the Court finds the Plaintiff's arguments unpersuasive.


D.    **Past Relevant Work**

In general, the Plaintiff asserts that the ALJ's determination that he could perform his past relevant work is not supported with substantial evidence. [Doc. 16 at 22]. First, he asserts that the ALJ's errors in evaluating the severity of his bipolar disorder, the residual functional capacity, and his creditability render the step four analysis unsupported by substantial evidence. [Id.]. Second, the Plaintiff asserts that the ALJ failed to provide detailed information pursuant to the requirements of Social Security Ruling 82-62. [Id. at 22-23].

A vocational expert testified during the hearing. The vocational expert stated that the Plaintiff's past relevant work included a preschool teacher, case aide, waiter, and a court clerk. [Tr. 63]. A preschool teacher is considered light and skilled work, a case aide and waiter are light and semi-skilled, and a court clerk is sedentary and skilled. [Tr. 63]. The ALJ asked the vocational expert whether an individual is still able to perform the Plaintiff's past relevant work with the following limitations: capable of lifting 30 to 40 pounds, sit and/or stand six hours each

out of an eight hour work day, seizure precautions with no working around hazardous equipment and no unprotected height. [Tr. 63]. The vocational expert testified that such a person is capable of performing the Plaintiff's past relevant work except that as a waiter. [Tr. 65]. In addition, the ALJ asked the vocational expert to assume that the individual had the same limitations as above but could only perform work at the sedentary level. [Tr. 65]. The vocational expert testified that such an individual could perform work as a court clerk. [Tr. 65]. Finally, the ALJ asked whether an individual could still perform the Plaintiff's past relevant work if the individual experienced two seizures a week followed by two or more hours of the inability to focus or maintain attention and concentration. [Tr. 65]. The vocational expert replied that those restrictions would not allow the performance of any work activity. [Tr. 65].

The ALJ found that the Plaintiff was capable of performing work as a case aide, pre-school teacher, and a deputy court clerk. [Tr. 19]. The ALJ stated that these jobs do not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity. [Tr. 19]. The ALJ explained that a preschool teacher is light and skilled work, a case aide is light and semi-skilled, and a court clerk is sedentary and skilled. [Tr. 20]. The ALJ based his finding on the vocational expert's testimony and stated that the vocational expert's testimony was in accordance with the Dictionary of Occupational Titles ("DOT"). [Tr. 19-20]. In addition, the ALJ found that the Plaintiff could not return to his previous job as a waiter. [Tr. 2-].

The Plaintiff asserts that the ALJ's finding that he could perform past relevant work is not supported by substantial evidence because the ALJ erred in evaluating the severity of his bipolar disorder, the residual functional capacity, and his creditability. The Court has already discussed these issues and will not repeat its findings.

The Plaintiff also asserts that the ALJ's step four analysis fails to comport with Social Security Ruling 82-62. Specifically, the Plaintiff states, "[T]he ALJ failed to provide detailed information in regards to the strength, endurance, manipulative ability, mental demands, and other requirements that Plaintiff's prior work as a case aide, preschool teacher, and deputy clerk entailed." [Doc. 16 at 22-23]. Social Security Ruling 82-62 states that the "claimant is the primary source for vocational documentation." 1982 WL 31386, at *3. In addition, the Ruling explains that the decision as to whether the Plaintiff is able to return to his or her past relevant work "must be developed and explained fully in the disability decision" and that the ALJ must make specific findings of fact. Id. at *3-4. Finally, the Ruling provides, "Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. Id. at *3.

The Court disagrees with the Plaintiff for several reasons. First, the Ruling does not state that the ALJ must explain information with regard to strength, endurance, manipulative ability, mental ability, and mental demands. The Ruling only provides that this documentation "must be obtained as appropriate." SSR 82-62, 1982 WL 31386, at *3. Second, the Ruling states that "the claimant is the primary source for vocational documentation." Id. Third, this information is in the record in a "Work History Report," in accordance with SSR 82-62. [Tr. 180-87, 189-96]. Fourth, the vocational expert testified about the physical and mental demands of each job, which the ALJ articulated and relied on in his decision. [Tr. 63]. See Smith v. Apfel, 23 F. App'x 357, *358 (6th Cir. 2001) ("stating that "[a] vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments") (emphasis added) (citing Varley v. Sec'y of HHS, 820 F.2d 777, 779 (6th Cir. 1987)). Finally,

even if the ALJ did not state the information in his decision, it is well-established the ALJ is not required to comment on all the evidence provided in the record. See Boseley v. Comm'r of Soc. Sec., 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."); Blake v. Astrue, No. 3-11-cv-317, 2012 WL 1867265, at *14 (S.D. W.Va. May 22, 2010) ("[A]n ALJ is not required to comment on every finding in a medical opinion.").

Accordingly, the Court finds that the Plaintiff's argument is not well-taken.

## VI.    CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine the Plaintiff is capable of performing medium work with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[7] that the Plaintiff's Motion for Summary Judgment [**Doc. 15**] be **DENIED**, and that the Commissioner's Motion for Summary Judgment [**Doc. 19**] be **GRANTED**.

Respectfully submitted,


_____ s/ C. Clifford Shirley, Jr.____
United States Magistrate Judge

---

[7] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).